ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY V. R. S. ROGERS.

Decided February 22, 1908.

**1.—Assignment of Error—Practice on Appeal.**

An assignment of error based upon the admission of evidence will not be considered when it does not appear from the record that the evidence was objected to, or that the court ruled on an objection made.

**2.—Carrier of Live Stock—Reasonable Time—Evidence.**

In a suit for damages for negligent delay in the transportation of cattle from Texarkana to St. Louis, a witness who had been engaged in the shipment of cattle between said points for a long time and who was familiar with the route and distance, would be qualified to testify as to the time which would be reasonably required to make the trip.

**3.—Damages—Market Value—Evidence.**

Where, in a suit for damages for delay in the transportation of cattle to market, there is other evidence of the market value of the cattle at the time they were sold, evidence as to what the cattle in question sold for was admissible as a circumstance tending to show the market value of the cattle at that time in their then condition, from which the damages were to be determined.

**4.—Damages—Depreciation in Value—Testimony.**

- A witness who has had experience in shipping and selling cattle and who is informed by the market reports and quotations as to the market value of the different classes and grades of cattle on a certain day is qualified to testify as to the depreciation in value on said day of cattle, with which he is familiar, by reason of delay and rough handling in transportation.

**5.—Damages—Weight and Price of Cattle—Evidence.**

Under an assignment of error that the court erred in refusing to allow the defendant to show that the plaintiff knew nothing of the weights of his cattle and the prices for which they sold except what was shown by the account sales, record considered, and held to show that the assignment was not supported thereby.

**6.—Damages—Carrier of Live Stock—Delay—Defense.**

A carrier being charged with delay in the transportation of cattle over its own line, the fact that a connecting carrier was guilty ·of negligence in failing to deliver said cattle to the defendant at an earlier hour, was irrelevant and immaterial, and the trial court properly refused to charge the jury that the negligence of the first carrier would excuse the negligence of the defendant.

**7.—Evidence—Issue—Charge.**

Where it appeared from the evidence that the delay in the transportation of cattle was caused solely by the failure of the carrier to provide a suitable engine to move the shipment, the court properly refused to give to the jury a charge upon the Federal statute forbidding railroads from detaining cattle in cars longer than 28 hours.

**8.—Contract—Clerical Error.**

Where, by the terms of a shipping contract, it appeared that the plaintiff agreed to pay any loss or damage to his own cattle in a certain contingency, the mistake was so evidently a clerical one, either in writing the contract or preparing the record, that it should be disregarded, and the contract construed to mean that the carrier would pay said damages.

**9.—Carrier—Shipping Contract—Value of Live Stock.**

By the terms of a shipping contract it was provided that in case of loss or damage to the live stock, in consideration of a reduction in the freight rate, the liability of the carrier should be limited to the market value of the stock at the place of shipment and should not exceed a certain amount per head. Held, not binding on the shipper in the absence of evidence that there was in fact a reduction of rate, and that the contract was fairly made and entered into.

Error from the District Court of Dallas County. Tried below before Hon. T. F. Nash.

*Leake & Henry,* for plaintiff in error.—The statement of a witness who is suing to recover damages to a shipment of cattle on account of alleged delay in transportation should not be admitted to the effect that a certain number of hours would be ample time in his opinion for the transportation of a shipment of cattle between the points in question, such testimony being merely an inadmissible opinion or conclusion of the witness upon the very question in issue for the determination of the jury. Bugbee Land Co. v. Brents, 31 S. W. Rep., 695; Missouri, K. & T. Ry. Co. v. Darlington, 30 S. W. Rep., 251; Texas & P. Ry. Co. v. Byers Bros., 84 S. W. Rep., 1087.

Evidence merely to the effect that cattle sold for a certain price without anything else being shown in addition to the actual sale does not tend to establish their market value at the time of sale. San Antonio & A. P. Ry. Co. v. Turner, 94 S. W. Rep., 214.

Testimony embodying estimate of damages which is partially based upon a decline in market between two days of the first of which days included in the estimate the plaintiff has no knowledge of the market, is inadmissible because involving a conclusion for which the witness has not sufficient data or information as a basis. Southern Pac. Ry. Co. v. Maddox, 75 Texas, 305; Texas & Sabine Ry. Co. v. Lane, 79 Texas, 645.

Where plaintiff's suit is for alleged injury to a shipment of live stock by delay in transportation and the consequences of delay, such delay being occasioned through the cattle being unloaded into the pens at a feeding station, and the evidence shows that it was impossible to run the cattle through without exceeding the 28 hour limit, and that thus in order to comply with the law a delay through unloading was unavoidable, the jury should be instructed in relation to the law controlling the unloading of cattle in transit, and should not be allowed to charge against the carrier a delay which was unavoidable and necessarily contemplated by the parties when the shipment was made in order to comply with the law. St. Louis, I. M. & S. Ry. Co. v. Carlisle, 34 Texas Civ. App., 268; St. Louis & S. F. Ry. Co. v. Frazar, 97 S. W. Rep., 325.

*W. H. Allen, T. R. Bond, Word & Charlton,* for defendant in error.

TALBOT, ASSOCIATE JUSTICE.—This suit was originally instituted by R. S. Rogers, plaintiff, who is the defendant in error here, against the St. Louis, Iron Mountain & Southern Railway Company, who is the plaintiff in error, and the Texas & Pacific Railway Company. The first trial resulted in a verdict and judgment in favor of both railway companies and upon an appeal by Rogers to this court that judgment was affirmed as to the Texas & Pacific Railway Company, but reversed and remanded as to the St. Louis, Iron Mountain & Southern Railway Company. (Rogers v. Texas & Pacific Railway Co. et al., 94 S. W. Rep., 158.) The trial at which the judgment now appealed from was rendered was had upon an amended petition against the defendant, the St. Louis, Iron Mountain & Southern Railway Company alone. The suit is for damages alleged to have been sustained by the plaintiff Rogers, on account of unreasonable delays in the shipment of 170 head of beef cattle over said companies' lines of railroad from Terrell, Texas, to East St. Louis, Illinois. The defendant answered the amended petition, insofar as is necessary to state, by a general denial, and special plea to the effect that it received the cattle of plaintiff from the Texas & Pacific Railway Company at Texarkana, Arkansas, as under the law, being a common carrier, it was compelled to do, and transported the same in a reasonable time, under all the conditions and circumstances, to St. Louis, Missouri, the end of its line of railway, and there delivered the shipment without any injury having resulted to same from any negligence of the defendant to the next connecting carrier, by which the cattle were transported to destination. That the shipment was interstate in its character; that by the terms of the contract of shipment it was expressly provided that the defendant should not be responsible for any injury, damage or loss to the cattle not arising from the negligence of the defendant or its employes; that the shipper, or his respresentative, went along with the cattle and assumed in the contract of shipment the duty of caring for and looking after his cattle in transit; that if said cattle suffered while being transported over defendant's line such injury was the result of the inherent quality of the animals and their condition at the time, or from the failure of the shipper and his representative to properly care for them in transit; that if there was any delay for any unusual length of time while the cattle were on the line of the defendant, such delay was the result of accidental causes and unusual and exceptional conditions and stress of weather, which could not have been avoided by the exercise of any reasonable degree of care. Defendant further pleaded that the contract of shipment between itself and the plaintiff was executed in the State of Arkansas, to be principally performed in said State; that the contract of shipment expressly limited the responsibility of the defendant for any loss or damage that might occur through its negligence on its line of railway to the market value of the cattle at the point of shipment. Defendant also denied partnership with the Texas & Pacific Railway Company, or that the latter was its agent in the making of the contract of shipment.

The trial resulted in a verdict and judgment in favor of plaintiff for the sum of $1535, from which this writ of error is prosecuted by the defendant.

The evidence warrants the following conclusions of fact:    On January 23, 1904, the plaintiff delivered to the Texas & Pacific Railway Company at Terrell, Texas, 170 head of beef steers to be transported over its line of railway to Texarkana, Arkansas, and thence to East St. Louis, Illinois, over defendant's road.    Bills of lading or shipping contracts were signed by the Texas & Pacific Railway Company and the plaintiff Rogers, at Terrell, by the terms of which the Texas & Pacific Railway Company became bound to transport the cattle to Texarkana only, at tariff rates and to there deliver them to the defendant, the St. Louis, Iron Mountain & Southern Railway Company.    The bills of lading, however, show that the cattle were consigned to the National Live Stock Commission Company, National Stock Yards, East St. Louis, Illinois, as the ultimate destination of the shipment, and that the Texas & Pacific Railway Company limited its liability to damages accruing on its own line.    The cattle were delivered to defendant at Texarkana, Arkansas, at 11:30 o'clock p. m., January 23, 1904, in good condition and there unloaded, over plaintiff's protest, and the shipment negligently delayed for ten hours.    There were no new bills of lading or contracts of shipment signed by the plaintiff and defendant at Texarkana, but defendant's agent at Texarkana simply erased "Texarkana" and inserted "East St. Louis, Ill.," in the original bills of lading or contracts executed at Terrell, as the point of destination of the cattle, and the shipment continued over defendant's line, under the contracts as thus changed, and with the words "changed at Texarkana, R. S. Ryan, Agt.," endorsed thereon, to that place.    There was another negligent delay of the shipment at De Soto, Missouri, on defendant's line of railway, about 41 miles south of St. Louis, of 13 hours, during which time the cattle were kept in the cars, suffered from intensely cold weather, became restless, horned and bruised one another and lost heavily in weight.    The run from Texarkana to East St. Louis with plaintiff's cattle could reasonably have been made in from thirty to thirty-six hours, and defendant negligently failed to deliver them in a reasonable time.    The cattle did not reach their destination until about one or two o'clock p. m. Tuesday, January 26, 1904, and were not unloaded until about 5 o'clock p. m., and when offered for sale and sold the next day there had been a decline in the market, and they were badly drawn and presented a general bad appearance.    By reason of the loss in weight of the cattle, extra expense caused by the delays, and the decline in market plaintiff was damaged in the sum of $1535, the amount of the verdict and judgment.

There was also a provision in the contracts as follows:    "The second party (shipper) further agrees, for the consideration aforesaid that in case of total loss of his said stock from any cause for which the first party (railway company) shall be liable, to pay for the same the actual cash value at the time and place of shipment, but in no case to exceed the declared valuations of, if horses, ponies,

geldings, mares, or stallions, mules or jacks, one hundred dollars; oxen or bulls, fifty dollars; cows, steers or yearlings, thirty dollars; calves or hogs, ten dollars; sheep or goats, three dollars per head, which shall be taken and deemed as full compensation thereof and in case of injury or partial loss, the amount of damages claimed shall not exceed the same proportions." Neither at the time the contracts containing the foregoing stipulation were signed at Terrell, nor when changed, as stated, in Texarkana, was anything said about this provision being based upon a reduction in freight rates, and no such reduction was in fact made. The contracts further provided that the conditions thereof should inure to the benefit of all carriers transporting the live stock, unless they should otherwise stipulate, and, in substance, that the shipper, or his representatives, should accompany the shipment and unload and reload the cattle at feeding and transfer points, and look after and care for them in transit.

The first assignment of error complains of the court's action in admitting the testimony of the plaintiff Rogers to the effect that from thirty to thirty-six hours would be ample time for the transportation of a shipment of cattle from Texarkana to East St. Louis. Plaintiff contends that the record fails to show that the testimony was objected to by defendant at the time offered, or that the trial court made any ruling upon its admissibility. We are inclined to think this contention is sustained by the record. No separate bill of exception, preserving the point, was taken, and the only objection to the question and proceedings had in the matter is found in the stenographer's report of the evidence, which is as follows: "Q. What would be a reasonable time to make the run from Texarkana to East St. Louis of that character—that is, with a load of cattle? A. I should think from thirty to thirty-six hours would be ample time. Q. Thirty or thirty-six hours, you think, would be ample? A. Yes, sir." Counsel for defendant here stated, "that answer is objected to and excepted to for a number of reasons; in the first place, that is a question for the jury to determine after hearing all the evidence, in what length of time this bunch of cattle should have been transported, after stating all the facts and circumstances surrounding it and it would be inadmissible for the plaintiff to draw his conclusions. That is the very question to be decided by the court." Counsel for plaintiff then said: "I intended to ask what was the usual time in which to make that run?" The witness then answered: "Well, it is owing to what trains run. I understand they have a fast train." Counsel for defendant said: "I object to anything that the agent told him." Q. "You are talking about what occurred at Texarkana?" A. "Yes, sir; when I was asking about getting my cattle out of here, they said the fast train was gone, and as well as I remember they said the schedule time from Texarkana to St. Louis was thirty hours for the train that should have taken my cattle." Here the inquiry upon the subject ceased, and if the court made any ruling whatever upon the matter, or a ruling was insisted upon, it is not shown; nor does it appear that any motion was made to strike out the answers. But, waiving that point and treating the question as being properly presented for review,

we think there was no error in admitting the testimony. One of defendant's agents testified that the schedule time of its fast freight train from Texarkana to St. Louis was thirty hours, and it appears that the witness Rogers had been engaged in the shipment of cattle from Texas to East St. Louis for a long time and that he was quite familiar with the route and distance from Texarkana to that place. What was a reasonable time in which to make the trip was a pertinent and material inquiry in the case, and we think the witness Rogers sufficiently qualified himself to state what, in his opinion, would be such time. St. Louis, I. M. & S. Ry. Co. v. Gunter, 39 Texas Civ. App., 129.

Plaintiff was permitted to testify, over the defendant's objection, what his cattle sold for on Wednesday's market, and this action of the court is assigned as error. The proposition is that: "Evidence merely to the effect that cattle sold for a certain price without anything else being shown in addition to the actual sale, does not tend to establish their market value at the time of sale." If it should be conceded that this is a correct abstract proposition of law, yet there was no error in admitting the testimony complained of, in this case, for the reason that in addition thereto there was other evidence of the market value of the cattle. It is true plaintiff's damages were not to be determined from what the cattle actually sold for at the place of destination, but in view of the other evidence in the case we think the testimony objected to was admissible in connection therewith as a circumstance tending to show the market value of the cattle at that time in their then condition, from which such damages were to be determined.

There was no error in permitting the plaintiff to testify that the decline in the market and the appearance and other injuries of the cattle created a difference of 50 cents per 100 pounds in what the plaintiff's cattle would have sold for and what they did sell for. It is contended that this testimony embodied an estimate of damages which was partially based upon a decline in the market between two days, Monday, January 25, and Tuesday, January 26, of the first of which days the plaintiff had no knowledge of the market, and hence was inadmissible, because involving a conclusion for which the witness had not sufficient data or information as a basis. The contention is not, in our opinion, sustained by the record. The record shows that the plaintiff was an experienced cattle man, having engaged in the shipment and sale of cattle in the St. Louis and perhaps other markets for many years. He was fully acquainted with the character of the injuries to his cattle and knew the damaging effect such injuries and their drawn and shrunken appearance would have upon their market value. Plaintiff arrived at East St. Louis January 26, and remained there until after the sale of his cattle, Wednesday, January 27; and from his experience and knowledge of cattle, the information he received from the market reports and quotations, showed himself fully qualified and competent to give the testimony of which complaint is made. It was not absolutely essential, in order to qualify the witness to give the testimony complained of, that he should have seen the cattle sold in the St. Louis

market on January 25, 1904. The quotation as to the market on that day showed the weight of the animals sold, and whether they were steers, cows or bulls, and that "an advance of 10 to 15 cents was obtained on steers—and a few places the advance amounted to as much as 20 cents." With this information and the experience of the witness, we think he possessed sufficient knowledge of the matter about which he was testifying to authorize the admission of his estimate of the difference between what his cattle sold for and what they would have sold for, but for the delay and damage done to them. The data upon which his estimate was based was fully stated by him and justified the conclusion he reached.

Plaintiff in error's fourth assignment will not be sustained. We think the record discloses that the court did not refuse to permit the defendant to prove that the plaintiff had no knowledge of what his cattle sold for, except what was shown by the account sales. On the contrary, it appears, we think, that sufficient latitude was granted for that purpose. The witness testified, that he saw the cattle weighed; that he stood there and watched the weigher when he transferred the scale weights at the balance; that 169 head of his cattle weighed 192,800 pounds and the other one, a steer, weighed 1580, and that they sold for four and a quarter cents per pound; that he was there and saw the cattle sold. When asked if he knew the account sales to be correct, he said: "Yes, sir; I know I got them according to the weight and prices." Asked if he settled by the account sales, he replied, "Yes, sir; this is the account sales I got my money on when I sold." Being asked if he had "any knowledge of what they (the cattle) weighed or sold for, except from what your account sales show," he answered: "I saw him put down some weights and they corresponded with what he had on the balance of the scales." The court here stopped the inquiry into this matter, and in doing so, committed, in our opinion, no reversible error.

The refusal to give the following special charge is assigned as error: "The jury is instructed that if they find and believe from the evidence that the Texas & Pacific Railway train was late at Texarkana, whereby plaintiff's cattle missed the fast train of the defendant, and that if the shipment had caught the fast train, which it missed, the waits at De Soto and Texarkana would have been avoided and the shipment gone through on time, then your verdict will be for the defendant." The court did not err in refusing to give this charge. Plaintiff's alleged cause of action was the negligence of the defendant in failing to exercise ordinary care to forward his cattle after they were received by it at Texarkana, and to deliver them at East St. Louis within a reasonable time. These were the issues on the question of negligence, and any negligence on the part of the Texas & Pacific Railway in the transportation of the cattle from Terrell to Texarkana, as the case stood when the trial was had resulting in the judgment from which the present writ of error is prosecuted, did not enter into the controversy and was properly excluded from the consideration of the jury. Plaintiff was only entitled to recover upon proof that the defendant, St. Louis,

Iron Mountain & Southern Railway Company, negligently failed to promptly transport the cattle, etc., and defendant could not escape liability for its failure to do so, by showing that the Texas & Pacific Railway Company had likewise been guilty of negligence, and did not deliver the cattle to it in time to be forwarded by it on the fast train, which left Texarkana about 9 o'clock p. m., on the night the cattle arrived there.

There is no evidence showing any negligence whatever on the part of the plaintiff or his representative in reference to unloading or reloading, or to the handling and care of the cattle in transit, and the requested charge submitting such an issue to the jury was properly refused.

Nor do we think the evidence called for the submission of the special charge requested to the effect that it is the duty of a railway company to unload cattle while in transit for water, feed and rest, when their condition requires it, and that such company is not permitted by law to retain cattle on the cars under the circumstances longer than 28 hours, and therefore they could not charge against the defendant any time which necessarily would be lost in complying with that provision of the law. There is no pretense that the delay at De Soto was for the purpose of complying with the law referred to, and when the cattle reached Texarkana they had not been on the cars more than 12 or 15 hours, and their condition did not then require that the transportation be delayed in order to feed, water and rest them. If it be true that the 28 hour limit would have been exceeded by an immediate continuation of the transportation at Texarkana before the next regular stopping place to feed, water and rest stock on its line could have been reached, yet we think this would not alter the case. That the purpose of the delay at Texarkana, however, was not to comply with the 28 hour law, is clearly apparent from the record. The reason given for such delay by defendant's witness was that the fast train departed before plaintiff's cattle reached Texarkana, and they had no suitable engine with which to proceed with the shipment.

Nor did the court err in overruling defendant's motion for a new trial for the reasons stated in its tenth assignment of error. We think there was, as shown by the record, sufficient competent evidence to enable the jury to determine, in accordance with the rule given them by the court upon the measure of damages, the amount plaintiff was entitled to recover. This evidence consisted principally of the quotations of the market, and the testimony of plaintiff and the witness Sample. It is true the record shows in one place that the plaintiff, upon cross-examination, stated that he was unable from these quotations to himself to tell what the market value of his cattle would have been on Monday, the 25th, but we think it clearly appears from his testimony as a whole, that he was qualified to express his opinion, from the data and information he possessed as to what would have been their market value in East St. Louis on that day, and that such opinion, together with all the evidence in the case, was sufficient to justify and sustain the verdict of the jury. As before stated, plaintiff was an experienced cattle man and

competent to judge, by comparison of his own cattle with cattle sold on Monday, January 25, as shown by the quotation of the market, giving their weight and whether steers, cows or bulls, of the market value of his cattle on that day, without having seen the cattle so sold.

We are also of the opinion that the trial court did not err in refusing to charge the jury, as asked by the defendant, to the effect, that the measure of damages in the case was to be determined according to the actual cash value of plaintiff's cattle at the time and place of shipment, and as there was no evidence of such value of said cattle at that time and place, to return a verdict in favor of the defendant. By reference to the stipulation upon which this instruction was based, which is quoted in our conclusions of fact, it will be seen, that by its construction and phraseology, the agreement was that the plaintiff should pay any loss or damage to his cattle, etc., but this we regard an apparent clerical error in writing the contract, or copying it in the record, and shall treat it as an agreement on the part of the railway company to pay the loss, if any, as therein limited. It will also be observed that the special provision of the contract here referred to not only limits the liability of the defendant for any loss or damage that might occur through its negligence, to the market value of the cattle at the point of shipment, but also declares that its liability shall in no event exceed, plaintiff's cattle being steers, thirty dollars per head. The charge in question was requested upon the hypothesis that the contract of shipment in this cause was entered into in the State of Arkansas, and valid in that State, and therefore enforcible in this State. We have not found it necessary to a disposition of the writ of error to determine whether the contract was an Arkansas or Texas contract, and hence that question is not decided. There seems to be, however, much force in the contention of the defendant in error, that the mere erasure of "Texarkana" and the insertion in the contract of "East St. Louis" as the point of destination of the cattle was simply an acceptance of the contract by plaintiff in error as a Texas contract and did not have the effect, although the change was made in the State of Arkansas, and assented to there by defendant in error, to make it an Arkansas obligation. But conceding for the purposes of this appeal that the contract is an obligation entered into in the State of Arkansas, yet the refusal of the special charge was not error. Such a provision as the one sought to be given effect by the charge asked will not be enforced where the evidence shows that the common carrier accepted the cattle for transportation without any reduction of the freight rate. The evidence in this case was sufficient to show that no reduction of the freight rate was made by either the initial carrier or the plaintiff in error in consideration of the stipulation in question, and that the contract containing it was signed by the defendant in error, without opportunity for a fair consideration of the stipulation. The plaintiff Rogers testified that he received no concession in freight rate, or other consideration for the limitation of liability contained in the stipulation and this testimony was uncontradicted, except insofar as the recital to the contrary in the

contracts themselves may have that effect. "Even the cases upholding contracts of the kind under consideration, proceed upon the theory that to be valid the contract must have been fairly entered into with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation." St. Louis, I. M. & S. Ry. v. Moon, 19 Texas Ct. Rep., 10. To this effect, as we understand them, are the decisions of the Supreme Court of Arkansas in the following cases: St. Louis, I. M. & S. Ry. v. Lesser, 46 Ark., 236; St. Louis, I. M. & S. Ry. v. Weakley, 50 Ark., 397; Kansas & Ark. V. Ry. Co. v. Ayers, 63 Ark., 331; St. Louis S. F. Ry. Co. v. Hurst, 67 Ark., 407. In these cases it seems that the validity and enforcement of the contracts were made to turn on the fact that they were entered into fairly and in consideration of a reduction of the freight rate. The special charge under consideration ignored this particular phase of the case and was properly refused. The specific question here decided did not arise in the case of St. Louis, I. M. & S. Ry. v. Hambrick, 97 S. W. Rep., 1072, cited by the plaintiff in error. In that case special exceptions were sustained by the trial court to that portion of the railway company's answer setting up a similar provision in the contract of shipment to the one sought to be enforced in the present case. The allegations of the answer showed clearly that the contract was entered into in the State of Arkansas, that it was valid under the laws of that State and would be enforced in that State, were the suit pending there. In reversing the judgment in that case, this court, speaking through Mr. Justice Bookhout, said: "That the allegations of the answer must be taken as true in considering the exceptions; that the clause of the contract to the effect that, in case of injury to the cattle, their value at the place of shipment in case of total loss constitutes the measure of damages, and in case of partial loss in the same proportion, was a material part of the contract, and if the evidence discloses that the same was valid in the State of Arkansas, where made, it must be enforced." Our opinion in that case was based largely upon the decision of our Supreme Court in the case of Chicago, R. I. & P. Ry. v. Thompson, 97 S. W. Rep., 459, which we regard as directly in point, and we adhere strictly to the views there expressed. But as it is unnecessary to determine whether or not the contract here under consideration was entered into in the State of Arkansas or Texas, the question involved in the Hambrick case does not necessarily arise in this case and need not be discussed.

Assignments of error not discussed have been carefully examined and considered and, in our opinion, none of them show reversible error. The evidence was sufficient to show unreasonable delay on the part of the plaintiff in error in transporting the cattle, and it is not claimed here that the verdict is excessive.

The judgment of the lower court is therefore affirmed.

*Affirmed.*

Writ of error refused.