QUANAH, A. & P. RY. CO. v. COLLIER et al.
(No. 815.)

(Court of Civil Appeals of Texas. Amarillo.
June 19, 1915. Rehearing Denied
Oct. 9, 1915.)

1. CARRIERS ☞230 — CARRIAGE OF LIVE STOCK — DELAY IN TRANSPORTATION — INSTRUCTIONS.

In an action for delay in the interstate transportation of live stock, whereby the shipment had to be diverted to a point within the state, it was not error to refuse an instruction for defendant, if a connecting carrier failed to run a special train from the point of connection to destination, where such carrier owed no duty to do so.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 961, 962; Dec. Dig. ☞230.]

2. APPEAL AND ERROR ☞930—ASSIGNMENT OF ERROR—ISSUES NOT REQUESTED.

In an action for delay in transportation of a stock shipment, whereby it became necessary to divert it to another market, an assignment of error that the verdict was insufficient to support a judgment for plaintiff in failing to find the weight of the cattle when sold and their market value at that time, or what they sold for, will be overruled, where the issue was not requested and the market value of the cattle was sufficiently proven, under Vernon's Sayles' Ann. Civ. St. 1914, art. 1985, providing that upon appeal an issue not submitted and not requested by a party to the cause shall be deemed as found by the court in such manner as to support the judgment, provided there be evidence to sustain such a finding.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3755–3761; Dec. Dig. ☞930.]

Appeal from District Court, Motley County; J. A. P. Dickson, Judge.

Action by R. L. Collier and another against the Quanah, Acme & Pacific Railway Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

D. E. Decker, of Quanah, and G. E. Hamilton, of Matador, for appellant. T. T. Bouldin, of Matador, and C. D. Russell, of Plainview, for appellees.

HENDRICKS, J. Collier and Chalk, the appellees, as owners of eleven car loads of cattle, sued the appellant, the Quanah, Acme & Pacific Railway Company, for damages to the cattle, alleging a contract of shipment with appellant from Roaring Springs, Tex., to Kansas City, Mo., with the privilege of the Oklahoma City market. They aver that they delivered the 345 head of cattle to defendants at its stock pens at 8 o'clock, August 12, 1913, according to an agreement with the carrier, for the purpose of shipment, and that defendant detained said cattle at Roaring Springs until 2 o'clock of that date, at least five hours longer than they should have been detained, and that by reason of such delay the defendant failed to make connection at Quanah with the St. Louis & San Francisco cattle train, over which road said cattle were to be carried to Oklahoma City; that on account of its failure to make such connection, and on account of the fact that the cattle would have to be held at Quanah practically 24 hours, without feed or water, before the transportation from Quanah could be continued, the said cattle were shipped to Ft. Worth over the Ft. Worth & Denver City Railway Company at the request of the defendant; that by reason of the defendant's negligence said cattle had to be carried to Ft. Worth and could not reach there in time for market on August 13th, but were sold on that market August 14th—suing for the difference in the Oklahoma City and Ft. Worth markets, for the shrinkage, also damages for marketable appearance of the cattle.

The jury, upon submission of special issues, found that it was agreed that the cattle should be penned for shipment not later than 8 o'clock a. m. (presumably the 12th of August, 1913); that the owners yarded the cattle at Roaring Springs by 7 a. m., and that the same were not loaded on the cars for shipment until 2 p. m.; that said train left Roaring Springs for Quanah about 3 p. m., arriving at the latter station upon the Ft. Worth & Denver about 8 p. m. of the same day; and found that the shipment was diverted to the Ft. Worth & Denver City Railway Company at Quanah for transportation to Ft. Worth, on account of the failure of the defendant to make connection with the Frisco at that point for Oklahoma City; also found that the agent of appellant at Roaring Springs informed the shippers that it would be necessary to pen the cattle at 8 a. m. in order to make said connection, and that the railroad company failed to furnish the cars for the purpose indicated. The jury found the market price of the cattle on the Oklahoma City market August 13th at $5.25 per hundredweight, and that the market price of the same upon the same date at Ft. Worth was about $5 per hundredweight; that the loss of the cattle by reason of the delay was about 18 pounds per head, and that the loss of the marketable appearance of said cattle by reason of the delay was 25 cents per hundredweight. The court found in his judgment $595.35 damages on account

---

of the marketable appearance (25 cents per hundredweight of the cattle), and also found the same amount difference in the market value, and further found the sum of $326 for loss of weight, aggregating $1,516.70 recovered against the appellant.

[1] The appellant railway company, in various phases, assigns, and undertakes to show in its brief, that the appellees were seeking to recover against the Quanah, Acme & Pacific Railroad, the initial carrier, in an interstate shipment, for negligence of the St. Louis & San Francisco and the Ft. Worth & Denver City Railroads, and, though initiated as an interstate shipment, but having been converted into a state shipment, the appellant was not liable, except for damages upon its own line.

Appellant has a misconception, as we view this record, of appellees' cause of action. The railway company made a contract to ship these cattle to Kansas City, with the privilege of the Oklahoma City market. There is no dispute but what it failed to furnish the cars at the proper time for the purpose of transporting these cattle from Roaring Springs, Tex., so as to meet the St. Louis & San Fransisco train at Quanah, for the continued transportation of the cattle to Oklahoma City. The general manager of the Quanah, Acme & Pacific Railway Company accompanied this shipment from Roaring Springs to Quanah. Before arrival there, by telegram, he attempted to get the Frisco management to hold its Oklahoma City freight train, but his efforts were unavailing. There were no facilities at Quanah to feed and water the 11 car loads of cattle, and they would have to have been held at that station about 24 hours for another train for the purpose of continuing the original plan of shipment. The owners of the cattle testified that at the solicitation of Mr. McCray, the general manager, the cattle were diverted to Ft. Worth, over the Ft. Worth & Denver City Railroad, which made a run of a little over 14 hours from Quanah to Ft. Worth, about which no complaint is made, nor could be made; the cattle arriving, however, at that destination too late on August 13th for the market of that day. The cattle were held over until the next day and sold for $4.75 per hundredweight. Appellant says, in one proposition:

"The theory of appellees' counsel, which theory was followed by the court, is that the initial carrier, Quanah, Acme & Pacific Railway Company, having made an interstate shipping contract, is responsible for the negligent acts of the Frisco Railway Company in not running a train out of Quanah on arrival of the Quanah, Acme & Pacific train; that the appellant is responsible for the negligence of the Denver in not making the market at Ft. Worth on the 13th of August, on the theory that a carrier cannot limit its liability to its own line in domestic or intrastate shipment."

Whatever theory the trial court may have applied, however, the case pleaded, made by

the evidence, and as found by the jury responding to the special issues, constitutes a contract and a duty to ship certain cattle to certain markets outside the state, and on account of the fault of the carrier making the contract and originating the shipment the transportation to those markets was abandoned, and the cattle were shipped to a different market inside the state, with certain resultant damages, ensuing, practically without contradiction, as the proximate result of the acts and omissions of said carrier. The failure of the Frisco, or the Denver, is not in the case. The former road, by any stretch, is not a relevant factor; and the latter road is not found to be negligent. In a statement following its proposition under the tenth assignment, appellant does say:

"There was evidence that the Denver was negligent in not making the Ft. Worth market on August 13th"

—without informing us of the substance of such evidence. All that we can find in this record upon such a question is that one of the owners of the cattle said that the run from Quanah to Ft. Worth on the Ft. Worth & Denver was from 12 to 16 hours, which, in connection with the testimony most favorable to appellant as to when the train on the Denver left Quanah, the Denver road made the run in a little more than 14 hours.

There are several academic propositions propounded and urged, involving the Carmack amendment (Act June 29, 1906, c. 3591, § 7, pars. 11, 12, 34 Stat. 593 [U. S. Comp. St. 1913, § 8592]), and whether the several liability contracts of the Denver and the Quanah, Acme & Pacific affect certain questions, which, as applied to the contract made to ship these cattle to Oklahoma City, the duty imposed, the violation of same, and the damages flowing therefrom, as exhibited in this record, are almost unnecessary to discuss. For example: The appellant requests the submission of an issue:

"If the Frisco had received the cattle of plaintiff at Quanah, at the time they arrived there over defendant's line, and [had] transported them with reasonable care and dispatch, would said cattle have reached Oklahoma City in time for the market there on August 13, 1913?"

The record is as certain as a question of this kind could be made so that if the initial carrier, the appellant, had furnished the cars and transported the cattle as it should have done, the train would have reached Quanah in ample time to have connected with the Frisco, to have reached the Oklahoma City market on that date.

Again, it was requested:

"If you find that it was the negligence of the Frisco Railway Company, in its failure to run a train from Quanah to Oklahoma City and transport plaintiff's cattle after the same arrived at Quanah, which was the proximate cause of the injury and damage to plaintiffs, then you will return a verdict for defendant."

What the Frisco failed to do, when no duty whatever is shown that it should have made

up a special train, after appellant had failed to make the connection, is wholly immaterial.

There are a number of objections to the charge of the court, without any exceptions, which we will not consider.

[2] The appellant's nineteenth assignment of error (not in its motion for new trial) complains that:

"The verdict of the jury, having failed to find the weight of the cattle on the day sold, and the market value of the same on the day sold, or what they sold for, is not sufficient upon which a judgment for plaintiff can be rendered for any sum."

This matter should have been called to the attention of the lower court. However, the appellee accompanying the cattle testified:

"I do know the market value of that class of cattle on the Ft. Worth market on August 13, 1913. It was a good strong 5 cents the day I got there, and there was very little difference in that day's market and the next day. The market was pretty steady along about that time. These cattle, the day they got on the market, brought $4.75 and they brought all they could bring on that day," etc.

The market of the 14th with reference to the particular cattle was sufficiently proven. St. Louis, Iron Mountain & South. Ry. Co. v. Rogers, 49 Tex. Civ. App. 309, 108 S. W. 1027, writ of error refused; Reeves v. Texas & Pacific Railway Co., 11 Tex. Civ. App. 514, 32 S. W. 920. It is true the jury did not find specifically the market of that day, and found the market of the day previous, which, as compared to the Oklahoma City market of the same day, was 25 cents per hundred. Under article 1985, Vernon's Sayles' Civil Statutes:

"Upon appeal or writ of error, an issue not submitted, and not requested by a party to the cause, shall be deemed as found by the court in such manner as to support the judgment, provided there be evidence to sustain such a finding."

The pleading embraces the issue not specifically found, and the evidence supports it. A careful reading of the judgment and of the manner in which the trial court finds the amounts makes it clear that, as to a part of his judgment, he bases it upon the findings of the jury. As to the judgment for the difference of the market value in the cattle, as to the two markets, the court's language is ambiguous. Whether the difference in the market value, $595.35, as found by the court, was based upon the specific findings of the jury, is not at all clear, unless you would say that he found that difference 25 cents, the same as the jury, would show that intention. Appellant, however, did not plead more than the 25 cents difference in market value, but specifically alleged that amount, and consequently the court could not have found more. This statute reads that upon appeal an issue not submitted and not requested shall be deemed as found in such a manner as to support the judgment, if there be evidence for that purpose. Such an issue was not requested, and upon the command of the

statute the assignment is overruled. We think the judgment of the trial court should be affirmed.

Affirmed.