## TELLES v. ESPARZA. (No. 2233.)

Court of Civil Appeals of Texas. El Paso. Feb. 14, 1929.

Rehearing Denied March 7, 1929.

E. B. Elfers, of El Paso, for appellant.

Jones, Hardie & Grambling and Ben Howell, all of El Paso, for appellee.

HIGGINS, J. Appellee was a passenger for hire riding in an automobile owned by appellant and driven by the latter's employee. At the intersection of Overland and St. Vrain streets in the city of El Paso the car collided with a truck owned by Lee Moor and driven by Moor's employee.

Appellee was injured by the accident particularly about his head and mouth. He brought this suit against appellant to recover the resulting damage.

Defendant answered by general denial and special plea that the collision was not due to any negligence on the part of the driver of the car owned by him, but was due solely and proximately to the negligence of the driver of the truck, and that said driver and Moor were solely liable for the plaintiff's injury and damage.

The case was submitted upon the general issue. Verdict was returned and judgment rendered in plaintiff's favor for $450, from which defendant appeals.

██ Plaintiff was a witness in his own behalf. Upon his cross-examination he testified:

"Mr. Lee Moor did give me the $64.00 that paid me for my work during the time I was off, and I made an agreement with Mr. Moor in that connection. That is my signature to the agreement."

Thereupon counsel for defendant offered in evidence the following instrument:

"October 31st, 1927.

"Mr. Lee Moor, El Paso, Texas—Dear Sir: "In consideration of the advance by you to me of $64.00 for which I have this day signed a note, I agree to prosecute to final judgment my claim against Ramon Telles for injuries sustained by me while riding in a taxi owned by Ramon Telles. If this suit is decided against me then I will release you from any liability on account of the accident if you will cancel the note and pay the doctor's bills resulting from the accident. If this suit is decided in my favor then in case I recover the amount of $64.00 plus doctor's bills then I will repay you the amount advanced by you to me and I will pay the doctor's bills.

"This agreement is signed at the same time as an advance by you to me of $64.00, the receipt of which is hereby acknowledged.

"[Signed]  Vicente Esparza.
"Accepted: [Signed]  Lee Moor."

Upon redirect examination he testified:

"At the time that I signed this instrument on the 31st of October, in Mr. Howell's office, I had received some dental treatment at that time. When I came to the office of these lawyers, I was coming there to file suit against both drivers, of the truck and of the car. I did not have any money with which to pay for my dental treatment myself. I had been told by the doctors that I had to have dental treatment. I had the money that Mr. Lee Moor furnished me with which to pay the dentist for treating my teeth at that time. That was after I signed this agreement. I did not have any other way to get the money except getting it from Mr. Lee Moor. I was out of work sixteen days, and I didn't get any pay from the Railroad Company until a month afterwards. At that time I had a family, and I had ten children. Those children are twenty-one, twenty-two, eighteen, sixteen, twelve, six, eight, two and three years old. The youngest is one and a half years old. Those ages I gave are approximate. I didn't have anything saved up with which to live on during the time I was laid up. Earning $4.00, with that big family, I couldn't save anything."

Error is assigned to the admission of the testimony developed upon the redirect examination, particularly the latter part thereof.

The plaintiff had the right to elect whether he would seek to hold Moor or appellant liable for his injury, but the agreement with Moor was admissible against plaintiff, as affecting the credibility of his testimony against appellant. The agreement, if unex-

plained, was prejudicial to plaintiff. In this situation it was permissible for him to show the necessitous condition which prompted him to make the settlement with Moor, evidenced by the letter. Haney v Clark, 65 Tex. 93. Ordinarily, the evidence complained of is inadmissible, but appellant, having introduced the letter in evidence, cannot be heard to complain of the testimony in explanation of the reasons impelling the plaintiff to make the agreement with Moor.

█ In any event, we do not regard the same as having had any prejudicial effect against appellant, for the evidence abundantly shows negligence on the part of appellant's employee, causing the collision, and the damages assessed are exceedingly moderate when the extent of the plaintiff's injuries and suffering are considered. The undisputed evidence shows he was seriously injured, especially in his mouth, and he suffered very much. This is shown, not only by the plaintiff's own testimony, but by the dentist who treated the injury to his mouth and teeth.

█ It is contended the jury was guilty of misconduct, in that during their deliberation it was asserted appellant could force Moor to repay part of what damage might be awarded the plaintiff, and that such misconduct influenced the verdict returned.

Six of the jurors testified some reference was made in the jury room to Moor's liability, but they are not clear as to what was said, and it is apparent the reference had no effect upon them. Three jurors testified they heard no such discussion. The testimony of the jurors Kilpatrick, Sampson, and Hampton is the most favorable to appellant.

Kilpatrick testified:

"During our consideration of this case I heard statements or arguments advanced that Lee Moor should be made to contribute to or pay part of the judgment that might be rendered in this case against Ramon Telles. I did not pay much attention to it, except the argument came up in the course of the discussion. I know they said the plaintiff was entitled to damages being a passenger. Someone said the man was entitled to damages, and he could get it back from Lee Moor, he said Lee Moor was guilty or would not have paid that doctor's bill beforehand. The first ballot stood six to six. There was kind of a confusion on the ballot, and they then put it in a different form, and the next ballot, I think, was changed considerably. I can not say whether the contention that was made that the man was entitled to damages, and Lee Moor could be made to contribute or at least pay a part of the amount against Telles was made by a juror who was favoring a verdict in favor of the plaintiff or not. There were several made that statement. They all seemed to agree to it. I thought that should be done myself, and thought that statement was true, that if we did return a verdict against Telles that he could get it back from

Mr. Moor. I do not remember any juror making that line of argument, several made it, it was discussed. * * * I do not know who made those remarks. I did not make them myself. I did not quite understand that agreement that was introduced in evidence, I never have got it straight yet. I heard it read, something about Lee Moor paying his doctor's bill, and he was to get his money back when the matter was settled in court, I never did get it straight. I got the idea this man would get the money out of Lee Moor because he must have been liable, or he would not have advanced the money. I have seen lots of times when a man pays a judgment he turns right around and sues another man, I don't know about a personal injury case. I thought the drivers of both cars were liable to a certain extent. I believe that this boy who was operating that car did not use the high degree of care he should have used, I figured he was liable to a certain extent. I thought that he was probably guilty of negligence. I figured there was another car coming, and he was doing the best he could to get out of the way. I said he was probably to blame, he was doing the best he could to get out of the way of this truck. He was to blame because he had this man in charge as a passenger. He could have stopped. I think in not stopping he was probably to blame. My belief that Ramon Telles himself was negligent was independent of some other idea that some one else was negligent. I thought the man suffered that much damages. We figured that that was not too much damages. I do not know at what stage of the proceedings these remarks were made, we were trying to get together, and they were using all kind of arguments to get together. I remember that after the jury came in Mr. Howell asked me some questions out on the street. I do not remember that he asked me if there was any misconduct of the jury in the jury room. No one in the jury room who purported to have any expert legal knowledge said that either one could recover against the other. They gave their ideas of what might take place."

Sampson testified:

"During the deliberation there was some talk that if a verdict was returned against Ramon Telles that Lee Moor could be made to pay part of it. I do not remember who brought that up. It just came up in general discussion about the case. We had not reached a verdict at the time that discussion came up. The remark was that they would split it, and Lee Moor would have to pay part of it, that is the way it was, as I understand it. I do not remember who made that remark or under what circumstances it was made. I did not think much about it."

Cross-examination:

"That did not influence my verdict. It was just a suggestion of what might happen after

it was over. So far as I know it did not influence the verdict of any juror."

Hampton testified:

"During the deliberation in the jury room there was something said that if a verdict was returned against Ramon Telles for any amount he could make Lee Moor pay it or part of it. I do not recall who made that statement or advanced that argument. I do not remember whether more than one person made that statement or not, but there was something said like that. The way that argument came up, as I remember, some of the jurymen were not in favor of giving this man very much damages, and I think they thought this man Telles would have his recourse on the other man, the man that owned the truck. I would not say that had any influence on the jurors who opposed giving a verdict, they first took a vote yes or no, voted yes or no whether this man was entitled to damages or not. I do not recall how we stood at that time. I think there were three or four that voted to give him more than the balance of them did. I think this discussion that Ramon Telles would have his recourse over against Lee Moor came up on the question of whether there should be any damages at all or not. I do not recollect what jurors advanced that statement or argument. Apparently it was one of the jurors who favored giving this man a verdict. I thought that Telles would have recourse on this other man that owned the truck when those statements were made. I do not think there was any argument on the question. Following that there was an agreement to give him damages, and an agreement as to the amount."

Cross-examination:

"I think it was just mentioned that Mr. Telles might get something out of Lee Moor, I do not think the matter was argued. Nobody knew that he could, it was just simply a suggestion that he might be able to. It had no influence on my verdict. I passed on the case according to the evidence. When someone spoke about Lee Moor paying part of the judgment I think someone said that is not our case."

This does not show any overt act of misconduct on the part of any member of the jury. They did not discuss any fact outside the record. The record is replete with evidence of Moor's connection with the accident. A juror cannot impeach his verdict, and an unsound process of reasoning by jurors in arriving at a verdict does not constitute statutory misconduct. Inquiry into the mental processes of jurors in arriving at a verdict is not permissible, unless an overt act of misconduct is shown reasonably calculated to improperly influence some member of the jury in reaching a verdict. When an overt act of misconduct is shown, then it is permissible to show its improper influence upon the juror's mind. Bradley v. T. & P. Ry. Co. (Tex.

Com. App.) 1 S.W.(2d) 861, and cases there cited. Under the case cited, statutory misconduct of the jury in this case was not shown.

Affirmed.