**ELIZONDO v. REGAN et al.**

No. 2519.

Court of Civil Appeals of Texas. El Paso.
April 2, 1931.

Rehearing Denied April 16, 1931.

## WALTHALL, J.

J. H. Elizondo brought this suit against J. J. Regan and First National Bank of El Paso to recover upon a written contract for the sale and delivery of cattle. The contract pleaded is as follows:

"This contract made and entered into by and between Don Jesus H. Elizondo, party of the first, and J. J. Regan, party of the second part, both of El Paso, Texas, Party of the first part sell to the second part five hundred and fifty head of cattle, five hundred at seven cents per pound, and fifty head at six and a half per pound cattle to be weighed on arrival at the stock yards at El Paso all cattle to be weighed together and fifty average cattle at six and a half cents.

"If anything happens that said cattle do not pass over to El Paso the day they arrive then in that event the party of the first part shall have the right to feed and water the cattle but shall not be allowed to weigh them for fifteen hours, after being fed and watered.

"Party of the second part will order the cars.

"All cattle delivered under this contract must be merchantable.

"All cattle delivered must be steers and stags.

"A guarantee will be made from the First National Bank of El Paso to the Banco De Nacional of Durango of five thousand dollars evidenced by a check of like amount signed by the party of the second part and given to the party of the first part, and shall be forfeited if cattle are delivered according to the contract.

"Cattle will be delivered on or about February 18th, 1930, El Paso Stock Yards.

"[Signed]   J. H. Elizondo
"Party of First Part.
"J. J. Regan
"By W. D. Connell  [Signed]
"Party of Second Part.
"Feb'y 8th, 1930."

It is alleged that Regan caused the $5,000 to be deposited in the bank as provided in the contract, and the said bank caused a guaranty to be made to the Durango Bank as in the contract provided, and that said money is on deposit in the bank to guaranty the performance by Regan of his part of the contract.

Plaintiff alleges the said 550 head of cattle were brought to El Paso by him, and on or about the 18th of February, 1930, tendered to Regan at the El Paso Stock Yards; states the weights of the cattle, and that he was entitled to receive upon the tender of said cattle the total sum of $30,753.

Plaintiff alleges that Regan failed and refused to accept and pay for said cattle; that it became necessary to resell said cattle, which he did, after using due diligence, at the total price of $25,916; that to sell the cattle

Jones, Goldstein, Hardie & Grambling, of El Paso, for appellant.

Whitaker & Peticolas and Turney, Burges, Culwell & Pollard, all of El Paso, for appellees.

he necessarily incurred a total reasonable expense of $4,000, leaving a net amount to him of $21,916.

Plaintiff alleges that by reason of the breach of said contract he has been damaged in the sum of $9,000, for which he sues.

Plaintiff prays for judgment against Regan for $9,000; judgment against the First National Bank of El Paso for $5,000 to be credited on the judgment against Regan, and that the bank be directed to pay said amount on said judgment.

Defendant Regan answered by general denial; specially denied that plaintiff tendered to him merchantable cattle as called for in the contract; that about 150 or 200 head of the cattle tendered were not merchantable cattle, stating why they were not; that the consideration for the execution of said contract was a herd of cattle shown to defendant's agents in Mexico, and which plaintiff and his agents represented were the cattle covered and intended to be covered by the contract and intended to be delivered, but that a large and material part of the cattle tendered were not the same cattle shown to defendant's agents in Mexico, and that by reason thereof the consideration for the contract failed. Defendant says he caused to be deposited with the First National Bank of El Paso the sum of money called for in the contract and asks that same be returned to him.

By cross-action defendant sues to recover of plaintiff the sum of $4,430.50, which he alleges to be the sum in excess of the price he agreed to pay for the cattle had they been in the condition agreed upon, and the price he could have sold them for on the El Paso market.

The First National Bank answered that it was a stakeholder, or depository, as to the sum of money mentioned in the contract, and its answer the usual pleading as such. The fact issues were submitted to a jury which found:

1. The cattle in contemplation of the parties at the time of signing the contract were the cattle inspected in Mexico by defendant's agent prior to signing the contract.

2. All the cattle tendered by plaintiff to defendant in the stock yards at El Paso were the same cattle inspected by defendant's agent, W. D. Connell, prior to signing the contract.

3. The cattle tendered by plaintiff to defendant as a performance of said contract were not merchantable cattle.

4. Plaintiff, in the sale of the cattle in question at El Paso under all the surrounding facts and circumstances, used ordinary care to sell said cattle for the best price obtainable.

5. On account of defendant's failure to receive said cattle, plaintiff was put to additional expense in selling same.

Defendant's special issues given:

1 and 2. Eighty-four of the cattle tendered by plaintiff to defendant in the stock yards were unmerchantable.

3. 7½ cents per pound was the market value in El Paso of the cattle contracted to be purchased by defendant from plaintiff, at the time and in the condition they should have been delivered at El Paso.

On the jury's findings the court entered judgment that plaintiff take nothing by his suit against defendants Regan and the First National Bank of El Paso. The court entered judgment that Regan recover of the First National Bank the $5,000 deposited; and, further, that Regan recover on his cross-action against plaintiff his damages in the sum of $2,675.75.

The court overruled plaintiff's amended motion for a new trial, to which plaintiff excepted and has perfected this appeal.

### Opinion.

On the trial plaintiff offered to testify that the sum of $6,000 was owing to the United States for import duties in connection with the importation of the cattle involved in this suit into the United States, and that he had no means of paying same other than by selling the cattle. The court, on objection, refused to hear the part of the testimony that plaintiff had no means of paying the import duties other than by selling the cattle.

The proposition presents no error. It does not tend to prove or disprove any issue in the case. However, the record shows that defendant inspected the cattle on their arrival in Juarez, Mexico. A controversy there arose between plaintiff and defendant as to whether the cattle were the cattle bought and agreed to be paid for under the terms of the contract. The parties could not come to an agreement, and defendant then notified plaintiff that he would not receive and pay for the cattle, and that, if the cattle were brought from Juarez to El Paso; it would be at plaintiff's expense. We think, under the facts shown, defendant waived the delivery of the cattle in the stock yards in El Paso. Whatever other issues might be in the case, it seems to us that under the facts shown defendant would not be responsible for plaintiff's want of means to discharge the United States customs duties. True, the jury found the issue in controversy in Juarez as to the cattle being the same cattle inspected by defendant's agent in Mexico to be the cattle shown defendant's agent before the contract was signed. But that finding would not, we think, necessarily admit the excluded evidence complained of. The jury also found that plaintiff used ordinary care to sell the cattle for the best price obtainable, and that finding is not controverted. As we view the cases of Haney v. Clark, 65 Tex. 93, and Telles v. Es-

parza, (Tex. Civ. App.) 14 S.W.(2d) 304, and St. Louis, I. M. & S. Railway Co. v. Rogers, 49 Tex. Civ. App. 304, 108 S. W. 1027, 1029, referred to by plaintiff, without reviewing them here, they are not in point. The evidence as to the price at which plaintiff sold the cattle was offered by the plaintiff and was undisputed by defendant. We think the question is ruled by vol. 1, Jones' Blue Book on Ev. §§ 171, 172; also, Telles v. Esparza (Tex. Civ. App.) 14 S.W.(2d) 304.

One other question is presented, misconduct of the jury.

▮▮▮ The proposition is to the effect that, while the jury was considering its verdict, and before any decision had been reached, the foreman of the jury stated that he was personally acquainted with some of the cattlemen who gave testimony favorable to Regan, and especially was he acquainted with W. D. Connell, one of his principal witnesses, and who gave testimony in his favor on all material issues, and that he knew that Connell has been honest in his dealings with the railroad over which Connell had shipped cattle, and had a good reputation for fair dealing. It is submitted that the statements of the juror were calculated to, and did, improperly influence the jury.

One of the principal facts at issue was whether the cattle tendered to defendant were the cattle inspected by Connell in Mexico before the contract was signed. Connell and other witnesses for Regan who saw the cattle in Mexico testified that a number of the cattle in the shipment were not the cattle inspected, and witnesses for plaintiff testified that the cattle were the cattle inspected. The jury found that issue in favor of plaintiff.

The other issue to which the statement of the jury could have any bearing was the merchantable condition of the cattle. A number of cattlemen, including Connell, testified as to the condition of the cattle at Juarez and at the stock yards at El Paso. The finding of the jury that many of the cattle were not merchantable could be sustained by the evidence without the evidence of Connell.

The remark complained of in plaintiff's motion, and assigned as misconduct of the jury, goes only to the weight to be given to the testimony of some of the defendant's witnesses, including witness Connell.

The two principal issues tendered by the pleadings were: Defendant claimed that part of the cattle tendered were different and inferior to the cattle inspected and contracted for, and that many of the cattle tendered were not merchantable. As stated, the first issue was found in favor of plaintiff.

Juror Turley said: Stated what the juror Christian said; that was before a final decision was reached; jury discussed the merchantable condition of the cattle; said could not say how the statement affected the verdict; don't know how they felt independently; "I do not know that his testimony had any effect on me whatsoever; there was something brought up in the argument as to what one witness said, as to his word, that he was a cattleman and this man spoke up and said he had known this man, had dealings with them and they were honorable men and fair, and that they had been fair and willing to accept the railroad's terms in settlement of their claims. As I recall that was all that was said about it."

Juror Harcourt said: Did not remember Christian stating that in their dealings with the railroad company they had been fair and honorable. Did not remember any statement made about their reputation; he got the impression he thought they were all right, "cannot say about their dealings with the railroad, do not know how I arrived at that; do not know when that discussion took place, just like we were talking."

Juror Krohill said: Remember Mr. Christian saying he had some business with the witnesses in the case, and they had been fair, something of that nature. "It did not have any effect on me." Understood it was in his work for the railroad, not personally. "I don't know whether it had any effect on me or not. It might have affected me in arriving at my verdict. I do not know what caused me to come to a decision on the case."

Juror Jack F. Lane said: The foreman, a railroad man, stated he had had some dealings with Mr. Regan and these cattlemen, and gave his experience that they were fair in their dealings with the railroad. Does not know what the other jurors thought about it. "Just took the testimony introduced on the trial and went by that as near as I could."

Juror Neal Grosheider said: Thinks the foreman, in the discussion, said, in his experience with the railroad, these people have shipped over the railroads a good many years and he had never heard of them putting in unjust claims, that he was inclined to think they were square shooters; that was the general trend of his statement; did not let it affect juror's verdict in any way; might be of some importance to juror in weighing testimony to know a man had been a square shooter, but it did not affect juror's idea of the matter.

Juror John McCall said: Jury was not all of one mind when they went out; at one time they ran up ten to two that the cattle were merchantable; the foreman, a railroad man, said he had had considerable dealings with the defendant and his witnesses, cattlemen, and that they had always been fair and honorable in their dealings with the railroad in their claims that they presented to the railroad. "It did not affect my verdict."

1062

Juror R. B. Deason said: The only thing he heard Christian, the foreman, say was that he was dealing with cattlemen all the time; did not hear him mention any particular cattleman; did. not hear him say he had dealings with these men and they were responsible, and had come up squarely. "What he did say about having dealings with cattlemen did not affect me in any way."

Juror S. J. Price said: Cannot say he heard Christian, the foreman, say he knew the defendant or any of the witnesses; the discussion came up about cattlemen, some said cattlemen were crooked; that is the way the thing started; some one said he had lots of dealings with cattlemen and that cattlemen were just as straight as anybody else. Juror said: "I was not influenced by what was said about cattlemen. I took the case according to the evidence. I did not allow those things to influence me." Mr. Christian never mentioned any names; said he had a lot of dealings with cattlemen; cannot say he referred to these witnesses in this case; said he knew these witnesses by reputation and they had good reputation for fair dealings with the railroad and were honest in their dealings with the railroad; "did not say these witnesses, cattlemen, was what we were talking about."

Juror S. Azar, said: Did not hear Christian say anything about knowing defendant's witnesses or of having any business experience with them.

Juror Turner said: Does not recall Mr. Christian mentioning any names in the jury room; he or some one said he thought the Mexican boys told a straight story, and Mr. Christian said he thought the cattlemen were telling a straight story, that he had had more or less dealings with cattlemen, shipping, etc., and had always found them to be very straight; "that in no way influenced me in finding a verdict."

Juror George Ryan, said: Thinks he heard Christian say he was acquainted with Connell, that he had some cattle transactions or shipments for him; that came up in discussion of the witnesses that had been present. He seemed to have faith in dealing with these cattlemen, not bearing on any special point. That did not have any weight or effect on his verdict. That came up in the discussion of the testimony in regard to the number of the cattle that were not merchantable; some jurors said the Mexican witnesses told a straight story, and then Christian said he thought they did, and that he thought these cattlemen told a straight story, that he had had dealings with Connell and found him fair in his dealings with the railroad.

Juror Christian said: Was foreman; worked as traveling freight man for the S. P. Railroad; in discussing the credibility of the witnesses somebody said the Mexicans told a straight story, "I said I thought so too; I said I also thought Connell and Riddle told straight stories; said I knew Connell and had always found him truthful and square in his dealings; that is about what I said as near as I can remember; I decided the case according to the evidence."

The above is briefly, in substance, the evidence. The trial court overruled plaintiff's motion.

The questions presented are: Was the statement of Christian in discussing the credibility of witnesses on the issue of the merchantable condition of the cattle material, and did it affect the jury's verdict? The jury are the judges of the credibility of the witnesses.

We have reviewed many cases and have found no case where the only matter mentioned in the jury room, assigned as misconduct, was some statement by a member of the jury going solely to the credibility of some one or more of the witnesses. We do not hold that it was within the province of the jury to mention or to consider any fact or facts not in evidence, in determining the weight to be given to the testimony of a witness; we think it irregular and should not be done, but we are not prepared to say the communication made by the juror Christian was such violation of article 2234 of the statute as to be reversible.

Finding no reversible error, the case is affirmed.